The tax court committed several significant legal errors in sustaining a massive tax liability against my clients. I would like to focus first on the burden of proof, which we submit should have been shifted to the Commissioner for two independent reasons. First, he relied on new matter within the meaning of Tax Court Rule 142 when he abandoned the sham theory, which was the basis for the original deficiencies, and instead pursued an overvaluation claim at trial. The Commissioner claims that he never asserted the sham entity theory. That contention is flatly refuted by the very language in his own answers filed in this proceeding, where he said that Camelot was a shell corporation created for the improper purpose of transferring the profits of night from the parents to their children as disguised gifts. That is clearly an allegation that Camelot is a sham, not that it is a legitimate entity that has no liquidation value or future prospects. In the last opinion in this case, on which I spent some time, I did not think that that was, in fact, the Commissioner's theory, and I characterized it differently. Do you agree with that? Your Honor, the Commissioner hadn't put forward a theory yet. There was no notice of deficiency. The theory of the case is determined by the deficiencies, and we submit also by the Commissioner's own answers, in which he explains What about the language in my opinion? Your Honor, I submit that your language was describing the general test for when a gift tax is attached, which is the theory that somebody got exchanged property, and they got more than they deserve in exchange, and the difference should be a gift. But the case here turns on the proceedings. I mean, this is the Commissioner's central thrust. You shouldn't look behind the notice, he says. The notices were issued in 2010, after eight more years of investigation. Okay, you said you had two different theories at the outset. The first is that the Commissioner erased a new matter and abandoned his original theory. What's your second theory? The notices were arbitrary and excessive, Your Honor. The notices, the Commissioner had no basis in 2010 for alleging, after a 12-year investigation, that Camelot was a legitimate but worthless entity. The company had net sales of $40 million, it had a sophisticated worldwide sales force, and he had done no economic evaluation over a decade. Issues notices that necessarily assign no value to Camelot, and then later into the litigation, submits a study by an expert who values the company at $22 million. That meets the test of excessiveness. He overvalued the alleged gift here by 55%, which is nearly twice the overvaluation that was deemed excessive in the Estate of Mitchell case in the Ninth Circuit. And it's an a fortiori case of arbitrariness, because here, excuse me, in the Cariaci case, the Fifth Circuit said it was arbitrary to issue a notice without having finalized an evaluation, and in this case, there was no evaluation whatsoever, despite a decade or more to do one. And so, the Commissioner's response is to say, well, we had a basis because we had come across evidence that the Cavaleros had followed advice to contrive technology transfers that never occurred. But Mr. Bellow had the same understanding, that the technology had not been transferred, that it belonged tonight, and he nevertheless concluded that the company was worth $22 million. So, the contrived transfer theory is not a basis for saying this company has no liquidation value and no future prospects, which is his thesis for why the notices were well-grounded. So, for that reason, Your Honor, as well as, if I could just go back, I appreciate that you're skeptical of the new matter test. Yes, I'm entirely skeptical of it, but if you want to say a few more things, go ahead. I will, Your Honor. Thank you. The sham entity theory is set forth in the answers, and it's necessarily implicit in the notices. That's where I believe the Court has to look for the basis of the deficiencies, not litigation over discovery documents. And in that context, it's crystal clear he alleged the Camelot was a sham. And at trial, he proceeded to go forward on an overvaluation theory. That theory is inconsistent. You can't say it's legitimate but has no value or is worth $22 million versus it's illegitimate. Inconsistent theory is requiring new evidence, and he doesn't dispute that the test for sham versus overvaluation entails new evidence. So, for both those reasons, we submit the burden of proof should have shifted to the Commissioner. We also think that the failure to do that was significant in this case because the tax court acknowledged that the Bellow analysis, which was the only support for this deficiency offered at trial, was subject to serious criticisms and arguably flawed, but he failed to even consider those criticisms on the theory that the burden of proof was dispositive. And I'd like to just stress, the government now says in its papers, these are mere quibbles, and they're all subsumed by the property rulings in any event. And that's simply not the case. Mr. Bellow testified that the fact that William Cavallaro's name was on the various patents for the pumps was an, quote, important component to his analysis of the value of the companies. The tax court found that the pumps had very little utility in the machines. He also testified that it was his understanding that Ken Cavallaro was not the person who went out in the market and identified the needs and ideas that would make the machines better based on customer input, and that if he was wrong about that, that his numbers would need to be adjusted. And in fact, he was wrong about that. The tax court concluded that Ken Cavallaro served precisely that role. And third, he used as comparables wholesalers of industrial machinery, and he acknowledged that that classification didn't really fit Camelot, which is a wholesaler of high-tech machines. So if you take all three of those acknowledged flaws in his analysis, there is reason, there's more than ample reason to believe they were material to the number and that a remand would result in a material reduction of the massive liabilities that my clients are facing at this point. I'm a bit disturbed by the Commissioner's method of valuation and whether it is in fact consistent with the Taylor decision. Could you talk to us a bit more about that? Well, Your Honor, the method of evaluation beyond what I've just identified as its flaws, or in terms of the Taylor, as I understand it, is the case talking about the consequence of saying that a notice is arbitrary and excessive. And as I suggested earlier, that's certainly the case here where he did not take the time to actually prepare evaluation and then issued notices saying the company was valueless. When you step back from this whole process, what we have is the Commissioner refusing to take evidence about the problems that may well exist with the expert testimony of their own witness and saying, well, but still it's the only thing in front of us, therefore we are going to accept it. Yes, Your Honor. That's just legally a very odd concept. I agree, Your Honor, and I submit it's a legally erroneous concept. The Commissioner argued in this court 70 some odd years ago that the burden on a taxpayer is to show not only that his number is wrong, but that there's a correct lower number that's owed. And this court said that was a mistake and that the Board of Tax Appeals would be led into error if it accepted it. And in Rex Ashe, this court said the test is showing that it's erroneous. The defects that we identified in the Bellows study were sufficient to show error in that valuation, even if we had the burden of proof, and therefore had to be considered even in that circumstance. And the tax court simply said, I'm not going to even think about that because you didn't discharge a burden of proof with respect to the property ownerships. And if I could turn to that briefly, Your Honors, the case should be reversed, the decision reversed with respect to the property rulings for the additional reason that they are infected with clear legal error. And I'd like to focus on the trade secrets because that's where the error is most glaring. Massachusetts law says that in order to own a trade secret, you have to take all reasonable and appropriate steps to protect the confidentiality of the underlying information. The evidence in this case shows that years before Mr. Hamill and any other accountants showed up on the scene that the tax court obviously took a dim view of. Camelot consistently took the steps necessary to protect the property through contractual provisions, through proprietary legends on the specifications, all of which is consistent with the claim of ownership and the legal requirements to be the owner. The evidence shows that Knight took none of those steps. It acquiesced in those assertions, again, well before Mr. Hamill arrived, and that was its consistent practice with other customers of it. That evidence should have led to the conclusion that Camelot owned the trade secrets, and the tax court said it's outweighed in that it pointed to a series of facts that have no relevance under the legal standard. It said, well, William Cavallaro owned the pumps, the patent pumps, and Knight owned the trademark. That's like saying, you know, somebody owns two cars, so they must own the third that belongs to the third person. It's just apples and oranges. He points to the statements about Camelot, excuse me, Knight describes itself as a manufacturer and its tax filings were the economic risks. It entered into a Cognex contract in which it said it referred to its machines. None of that has any bearing under the legal test for determining who owned the specifications based on Massachusetts trade secrets laws. And so for those reasons, Your Honor, we submit that the case has to go back. I know we have made a plea that the case be ended at the outright because of the length of proceedings, but I believe the most likely relief that we are entitled to, and clearly entitled to, is a brief hearing. If the case were to go back, what instructions would be given to the tax court as to the things it needs to do next? Well, we would, if I could write the order, Your Honor, I would say that the burden of proof has to be shifted to the commissioner. That the commissioner, the tax court, has to analyze all the criticisms acknowledged to be serious in the Bellows study to determine what the proper evaluation of the Camelot company is. That it has to analyze the distinct property rights and the copyrights and the trade secrets under the relevant legal standards that govern ownership of those interests. And it has to make its own determination as to an appropriate valuation? It does, because for all of these reasons, the commissioner's evaluation would have clearly been demonstrated to be erroneous. And at that point, the burden is no longer on the petitioners to come forward and say, here's what we actually owe. The burden is on him at that point, because we have essentially overcome the presumption of correctness at that point. Now the burden shifts back to him to say, OK, if Camelot is not worth $29 million, here's what it actually is worth. Thank you, Your Honors. Good morning, and may it please the Court. My name is Ivan Dale. I'm the Commissioner of Internal Revenue. Judge Lynch, I appreciate your candor in the questioning, and I wonder if I might just jump in and address your concern. I appreciate it. Thank you. Specifically. So, I mean, the rub of the matter is that the reason why the appellants want a remand is that they probably would like to submit a value as to their company at taking into account the criticisms they raise. The problem is they didn't do that in the first place. OK, so you're saying even if we were to remand, they don't get to put on any new evidence. Is that the implication? Well, I mean, put, I mean, what they're asking is... I know you don't want a remand to start with. You don't think their evidence is sufficient. But if there were a remand, do you think it would be confined merely to the evidence of your client? Does he have the discretion to take new evidence? I suppose that the tax court, I mean, the tax court is not our client, I suppose the tax court would have the discretion to take new evidence if it wished. But if you put yourself in Judge Gustafson's shoes in this case, his role is to decide, we know that a gift was made, and his role is to determine, well, what was the value of that gift? And he has, and he attempted very specifically to elicit testimony from the taxpayer's expert as to what would be the value of this company if we assume that the flagship product is in fact owned by the company that paid for it and had all the employees rather than Camelot. And they wouldn't answer the question. They refused to answer the question. He got very interested when taxpayers' experts started talking about a royalty adjustment that he made with respect to the patents and started asking questions about that. Well, how do I come up with that sort of royalty adjustment? How can I do that as a value, you know, someone assigned to value these companies? And he wouldn't answer that. He sort of said, well, I just kind of picked this 2 percent number out of thin air. So your problem, though, is that under Taylor, they actually can do that, can't they? They can, as I understand Taylor, they don't have the burden of proving the amount of the deficiency. They have the burden of credibly attacking the commissioner's determination of deficiency. And as I understand it, the court, because they didn't do the former, wouldn't consider their attacks on the commissioner's deficiency beyond noting that he had some reservations about the commissioner's deficiency. I'm willing to concede, actually, that if the if it is determined that the notice of contrary and erroneously that at that point in time, the tax court was entitled to make its own valuation and not to rely on the commissioner's valuation. It's required to. Yes, I think that may be the case. So I'm willing to consider that. But at that point then, it's a preponderance of the evidence. We have a we have an expert report from Orion that values the company based on the fact that the flagship product is owned by Knight and not by Camelot. And we have this other valuation that the flagship product is owned by Camelot and not by Knight. Yes, well, how can I go about valuing it, assuming the alternative and was not provided with any evidence from the taxpayers on which to do so? But the tax court itself says about the government's expert, it may be a bit arbitrary. And when the taxpayer says, yes, we think it is and we'd like to present evidence of that, it appears that the court said, no, I'm not interested in that norm. I'm interested in making an independent evaluation. And that's where the error may be. The tax court absolutely did not say that the commissioner's expert was arbitrary in his valuation. What he said was, let's assume for the sake of argument that you are right that the expert used the wrong Standard Industrial Classification Code or should have interviewed Ken Cavallaro or any of these fairly minor things that might impact on the value in some capacity. Even assuming that is the case, I can't do anything with that information because I don't know what the value would be if they had used the right Standard Industrial Classification  Card before the horse. I'm not understanding why that's the case. You can't get to that second point until you decide the first point, which is whether it was arbitrary and excessive. Okay. Well, so I don't even think that the argument in this case is that the commissioner I mean, this is an expert report coming up with a valuation method that came up with a number. I don't think anyone's contending that the use of a Standard Industrial Classification Code that was very close to even what taxpayers were contending means that the entire deficiency determination is arbitrary. That's not my understanding of where the arbitrary argument comes from. What they're arguing is that the original deficiency determination, which was not based on this particular valuation, but was based on the papers before the examiner at the time, that that was arbitrary. Well, suppose you've got an expert report, the commissioner that says it's $1,000, and in that expert report, on page two, on one item, it uses a wrong code, and therefore has the wrong item, and you know it's the wrong item. At that point, that's all you know, and the other side has an expert who says that's the wrong item, but doesn't say what the correction would be. Who is the burden on, at that point, to do something? It seems that the tax court here said, unless the taxpayer goes a step further and says, and if you corrected for that item, here's how much under $1,000 it would be. If the taxpayer doesn't do that, I'm just sticking with $1,000, even though there might be a wrong code. Is that a proper way for the tax court to proceed? Yes. And why isn't that inconsistent with Taylor? Because the word we're talking about here is arbitrary, and we're applying it to the original deficiency determination. So we're not asking, the issue in this case is not whether, and it was never raised, that whether the Mark Bellow report's use of a particular code on one line was arbitrary. Nobody consents that was arbitrary. No one. They just said it was wrong. They just said it was wrong. Well, that's, wrong is a lot different than arbitrary. I would invite this court to read the cases of Janus, the case of Zuhonin out of the Seventh Circuit that is a very good explanation of the arbitrary and erroneous doctrine. You're saying, then, with respect to non-arbitrary, but perhaps patent errors in the commissioner's valuation, the taxpayer has the burden of not just pointing out the error, but also of quantifying it. Yes. In a valuation case. And what's your support for that? Absolutely. Well, so my support for that is in the line of First Circuit cases. We've got Weak-Satch, we've got United-Aniline, we've got McMurtry. In all these cases, they say, look, there's two different things here we're talking about. One is the presumption of correctness, and one is the burden of proof. So the Helvering v. Taylor case talks about the presumption of correctness. And so if the taxpayer can demonstrate that the original determination was arbitrary, and another way of saying arbitrary is without rational foundation, that's how that term is defined, then at that point in time, then the presumption goes away. The second issue is the burden of proof, and in those First Circuit cases, it says, presumption or no, the burden of proof never changes. And there's a discussion in both of those First Circuit cases about a line out of the Ninth Circuit that is directly traceable to the cases cited in this, by the taxpayers in this case, criticizing the approach of saying, look, if you can point out one thing wrong in something the commissioner said, then the case is over, you've met your burden. That's not the case. The burden always remains on the taxpayer, unless the taxpayer can show that the original deficiency to determination was naked, in other words, based on no evidence whatsoever, arbitrary, and another way of saying arbitrary is without rational foundation whatsoever. And so the cases in which the presumption shifts are very, very, very limited. When you say the burden always remains on the taxpayer, unless you meet one of those tests you just articulated, you're saying that the burden that remains on the taxpayer is the burden to actually prove the alternative amount of the deficiency. Correct. Because you haven't actually, let's be clear, you haven't actually proved that the original problem in the methodology used, but can't quantify that. It may be the case that, in fact, that if you quantify that, then it's still the same number. That may be the case. And in fact, I'll submit to you that I bet the appellants didn't introduce this alternative evidence because it wouldn't have made that much of a difference anyway. And so now they want the case to be remanded back to the tax court so they can fix that error, I suppose. But really what they're saying, really, the gravamen of their argument, I don't think they're necessarily, I think they want more than a remand. I think they want this court to say, look, if we point out something wrong in the original commissioner's, the commissioner's original deficiency determination, case over, we win. And that's just not the law. And you know, I think maybe- Okay. I have a question. Let's assume that the, we cannot say that the original notice or the eventual amount of the deficiency is arbitrary, but nonetheless, there are concerns that it could be wrong. Who has the burden and what is the obligation of the tax court under those circumstances? The tax court, like a jury in any valuation case, has to decide what the value is. And so juries all the time, you know, sometimes they split the baby. Sometimes they say, well, this guy's report's a little bit more credible, I'll go with his. Sometimes they say this other report's a little more credible, I'll go with his. So that's what the tax court has to decide. The burden of persuasion in that case is on the taxpayer. So if you have, you know, everything laid out, it's the burden of persuasion remains on the taxpayer. And basically what the tax court judge says is, look, I asked your expert, what would the value be if all of these things that you're saying turned out to be true? And they couldn't provide it. I mean, that's the basis of Judge Gustafson's determination. He said, look, I tried. I don't have another value I can come up with other than what the commissioner's basically concession at this point, because the original determination was actually higher. And that original determination was based on a long investigation that had a lot of evidence. It, you know, there was evidence in the record by the taxpayer's own accountants that the value of this gift would have been even more than what the commissioner determined. It would have been $48.8 million, and we go through the math on that on page 48 of our brief. And so basically the commissioner's original determination is a downward adjustment from the taxpayer's own accountants at that point. And that's really the only valuation that we have based on the factual predicate that Knight and not Camelot is the owner of this flagship product because they have all the employees. Their people were the ones that did this software development. They're saying that the inscriptions on the computer screens and on the design means that it's Camelot's. Well, it was Knight employees that wrote that and just assumed that Camelot was a trade name. And Knight had maintained control over Camelot and the same CEO. And its own CFO confirmed all of this in his correspondence with the... May I ask a question? Have you all been through the CAMP program, the Civil Appeals Management program? I can't, I don't believe that, are we talking about the mediation program? Yes. I don't believe Judge King has called us on this case. You know, there are two ways of thinking about this case. One is that the commissioner is basically correct and taxes are owed and that this court should affirm on the basis of the commissioner's determination of what taxes are owed. And the other is no taxes are owed. And the discussion in this courtroom has actually been not so much on the premise that no taxes are owed, although that argument has been made to us. That might give the parties some context in which they might wish to take advantage of Judge King's services. And with the permission of the Chief Judge, I suggest you may want to think about that and get back to us within a week as to whether you're going to pursue this idea. Okay, Judge Ellis. I'm always open for business, so I'll talk with Joe and we'll come up with, we'll determine whether that's going to be fruitful or not. Okay, good. Thank you. You have some rebuttal. Thank you. Thank you, Your Honor. We'll certainly take that consideration in, but with my next three minutes, I'd like to stress that we violently disagree with the description of the burden of proof in this case. The presumption and the burden of proof can't be disaggregated, as Mr. Dale just suggested. If the presumption is your deficiency is presumed correct, logically it's overborne by evidence that it's incorrect. And so we don't have to demonstrate the bellows to go to your hypothetical, Judge Kea. We don't have to say it's arbitrary to abuse this classification code. We only have to show that it is erroneous to abuse it and that, therefore, the deficiency is erroneous. And the commissioner took the risk. Let me ask you about that. If you're taking care of the presumption, which is establishing it's erroneous, don't you both need to show that the methodology was wrong and that it was material that would have made a difference? Because that's that second step. Yes, Your Honor. And earlier I described what three defects that I think clearly are material. And Judge Gustafson did not say, I don't know what number to adjust to because you haven't given me anything to work with. He said, you didn't prove to me that you own the property. You failed to discharge your burden. These are serious criticisms. I'm not going to even talk about them and I'm not going to correct the numbers. So you're back to the presumption point. And I invite you to look at Rex Esch says over and over again, erroneous, wrong. It doesn't say arbitrary and without rational foundation is the test. And again, that makes sense because you're only overcoming a presumption of correctness, not a presumption that the notice is rational. And if you look at, Rex Esch points to the 1942 decision in Chicago Stockyards for the origins of this test. Chicago Stockyards points to two cases, Helvering v. Taylor, which does talk about what's arbitrary, and Helvering v. Welch, which does not. It just says it has to be shown to be wrong. I think the citations to Helvering v. Taylor in all of these cases is showing what happens once the burden is discharged. And in Rex Esch the court was saying, we disagree with other courts of appeals that say just coming forward with some evidence that might cast the number in doubt is sufficient to discharge your burden as a taxpayer and then the burden shifts to the commissioner. Instead, you have to always demonstrate that the commissioner's deficiency is wrong. But the Second Circuit case we cited in Thompson shows that you can discharge that burden by impeaching the government's evidence. He put in one study and his witness was also asked, well, what would be the adjustment if I disagree with you about this, that, or the other thing, including some of the things I've talked about? He declined also to make any adjustment. So the commissioner had the risk that we would impeach his study independent of any property rulings and call that deficiency number into question. His witness didn't say, here's how you can recalculate it if you disagree with me about this, that, or the other assumption in my study. He took the risk. And so, Your Honor, I submit that the burden of proof here was discharged, even if it was on us. The court has no further questions? Thank you, Your Honor. Counsel, when I reviewed the case law, I was struck by the fact that the Taylor case used the term arbitrary, but some of the subsequent cases have not used that term. They've merely used the term wrong or erroneous. Yes, Your Honor. How does this difference come about in the case law? Here's my understanding, Your Honor, that Helfring v. Taylor is saying, as we said at one of our arguments for shifting the burden of proof, is if you come in and show the notice of deficiency is arbitrary and excessive, the burden is eliminated from the case. And this court adopted that test in Worcester County Trust. By contrast, if the burden stays in the case, because the notice isn't arbitrary, then the commissioner comes in, his deficiency is presumed to be correct, he offers his evidence in support of that deficiency, the burden at that point is on the taxpayer to show it's wrong. And that's the language you see in Rex Ashe and the cases that it cites. What the commissioner is trying to argue here is that you have to blend these two things together and say you can't discharge a burden of overcoming a presumption of correctness unless you show that it was arbitrary. And that just doesn't follow as a logical matter. Thank you, Your Honor.